UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID BJORKLUND                :
                               :      PRISONER CASE NO.
        v.                     :      3:08-cv-1617 (CFD)
                               :
WARDEN                         :

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, David Bjorklund, commenced this pro se action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his Connecticut state court conviction for felony murder, robbery, assault and manslaughter on three grounds, including improper admission of his confession, inconsistent verdicts and denial of his right to confront witnesses.  For the reasons that follow, the petition is denied.

## I.  Standard of Review

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if Bjorklund claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  Estelle v. McGuire, 502 U.S. 62, 68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme Court "may be either a

generalized standard enunciated in the Court's case law or a bright-line rule designed

to effectuate such a standard in a particular context."  Kennaugh v. Miller, 289 F.3d 36,

42 (2d Cir.), cert. denied, 537 U.S. 909 (2002).  Clearly established federal law is found

in holdings, not dicta, of the Supreme Court at the time of the state court decision.

Carey v. Musladin, 549 U.S. 70, 74 (2006).

A decision is "contrary to" clearly established federal law where the state court

applies a rule different from that set forth by the Supreme Court or if it decides a case

differently than the Supreme Court on essentially the same facts.  Bell v. Cone, 535

U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court law when the

court has correctly identified the governing law, but unreasonably applies that law to the

facts of the case.  The state court decision must be more than incorrect; it also must be

objectively unreasonable, "a substantially higher threshold."  Schriro v. Landrigan, 550

U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual

determinations of the state court are correct.  Bjorklund has the burden of rebutting that

presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Boyette v,

Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of

correctness is afforded state court findings where state court has adjudicated

constitutional claims on the merits).  Because collateral review of a conviction applies a

different standard that the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition.  Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

## II.   Procedural History

Bjorklund was convicted, after a jury trial in the Connecticut Superior Court for the Judicial District of New Britain, of felony murder, robbery in the first degree, assault of a victim sixty years of age or older in the first degree and two counts of manslaughter.  He then entered a plea of nolo contendere to an information charging him as a persistent dangerous felony offender and committing an offense while released.  At sentencing, the trial court merged the conviction on the two manslaughter counts with the conviction for felony murder.  He was sentenced to a total effective term of imprisonment of sixty years.  On direct appeal, Bjorklund challenged his conviction on six grounds:  (1) his arrest and detention violated the state constitution, (2) the state failed to prove he intelligently and voluntarily waived his rights under Miranda,[1] (3) his statements to the police were involuntary, (4) the life sentences to which he was exposed as a result of the conviction for robbery and assault violated the state constitution, (5) the verdict on the charges of assault and manslaughter were inconsistent with the verdict on the charges of robbery and intentional manslaughter, and (6) the trial court improperly admitted the probable cause hearing testimony of an unavailable witness.  The Connecticut Appellate Court affirmed Bjorklund's convictions

---

[1]  Miranda v. Arizona, 384 U.S. 436 (1966).

3

in part[2] and the Connecticut Supreme Court denied his petition for certification.  See State v. Bjorklund, 79 Conn. App. 535, 537-38, 830 A.2d 1141, 1146-47 (2003), cert. denied, 268 Conn. 920, 846 A.2d 882 (2004).

In 2004, Bjorklund filed a petition for writ of habeas corpus in state court on the ground that he was afforded ineffective assistance of trial counsel.  Following an evidentiary hearing, the petition was denied.  See Bjorklund v. Warden, No. TTDCV044000062S, 2006 WL 2556626 (Conn. Super. Ct. Aug. 16, 2006).  The denial was affirmed on appeal.  See Bjorklund v. Commissioner of Correction, 108 Conn. App. 904, 948 A.2d 392 (per curiam), cert. denied, 288 Conn. 915, 954 A.2d 183 (2008).  In October 2008 Bjorklund commenced this action, challenging his conviction on three grounds.

## III.   Factual Background

The Connecticut Appellate Court determined that the jury could have found the following facts.  During the afternoon of August 26, 1998, Bjorklund was visiting at the apartment of his companion in New Britain.  At approximately 4:30 p.m., Bjorklund and his companion walked to a local store and purchased cigarettes, alcohol and ice cream. They returned to the apartment about one hour later but did not go inside.  Shortly thereafter, Bjorklund's companion went to Hartford to purchase cocaine for herself and Bjorklund.  About the same time, Bjorklund walked to a nearby bar.  Bjorklund, 79

---

[2]  The Connecticut Appellate Court found that Bjorklund was not afforded a probable cause hearing on the assault charge, as enhanced by the filing of the information.  The court vacated Bjorklund's sentence on assault and remanded for resentencing on this charge.  See State v. Bjorklund, 79 Conn. App. 535, 563, 803 A.2d 1141, 1160 (2003).  After resentencing, however, the total effective sentence was unchanged.

Conn. App. at 538, 830 A.2d at 1147.

On the way to the bar, Bjorklund stopped behind a school and hid a forty-ounce bottle of beer and several bottles of alcohol in the bushes.  He put two other bottles of alcohol in his pockets and entered the bar.  Bjorklund ordered a beer and sat at a table.  When he finished the beer, he refilled his glass with the alcohol he had hidden in his pockets.  However, a bartender approached him, confiscated the alcohol, and then the bartender refused to serve him because he was intoxicated and belligerent.  Bjorklund left the bar at approximately 7:00 p.m.  Id. at 538-39, 830 A.2d at 1147.

Outside the bar, Bjorklund approached the victim, Maurice Bolduc.  After a short conversation, they walked toward the school where Bjorklund had hidden his liquor.  Once behind the school, Bjorklund attacked Bolduc by repeatedly kicking his head and torso.  Bjorklund also took Bolduc's wallet.  Bolduc died the following day.  Bjorklund was arrested on August 27, 1998, on a violation of probation warrant concerning a separate incident.[3]  While being questioned by police, Bjorklund confessed that he had assaulted and robbed Bolduc.  He then was arrested on the charges underlying this petition.  Id., 830 A.2d at 1147.

## IV.  **Discussion**

Bjorklund challenges his conviction on three grounds: (1) the state introduced his confession at trial in violation of his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments; (2) the state courts violated his Fifth and Fourteenth Amendment right to

---

[3]  Bjorklund raised on direct appeal a claim that the violation of probation warrant was a pretext for questioning him concerning Bolduc.  The Appellate Court denied that claim, and it is not pursued here. 79 Conn. App. at 539-544.

be free from double jeopardy and permitted inconsistent and irrational verdicts to stand; and, (3) the state court violated his Sixth and Fourteenth Amendment right to confront the witnesses against him by admitting the witness' probable cause hearing testimony. Each issue is examined below.

### A.    Introduction of Confession

Bjorklund contends that his confession was introduced at trial in violation of his rights under the Fourth, Fifth and Sixth Amendments made applicable to the state by the Fourteenth Amendment.

### 1.    Fourth Amendment

The State first argues that this claim is not exhausted because, on direct appeal, Bjorklund challenged his arrest and detention only on state constitutional grounds.  The court need not determine whether the claim is exhausted because, even if Bjorklund had exhausted his state court remedies on this claim, it may not be asserted in a federal habeas action.

Fourth Amendment claims are not cognizable on federal habeas corpus review. See Stone v. Powell, 428 U.S. 465 (1976).   "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Id. at 481-82; accord Wallace v. Kato, 549 U.S. 384, 395 n.5 (2007) (reaffirming that Stone v. Powell precludes federal habeas review of Fourth Amendment claims unless the state fails to provide opportunity for full and fair litigation).

In reaching this decision, the Supreme Court weighed the justification for and cost of the exclusionary rule.  The primary justification for the exclusionary rule is to deter police conduct that violates a criminal defendant's Fourth Amendment rights. Powell, 428 U.S. at 486.  One of the costs of the rule is the exclusion of evidence that "is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant."  Id. at 490.  The Court determined that application of the exclusionary rule "deflects the truth-finding process and often frees the guilty."  Id. Thus, the Court concluded that the disincentive to police misconduct created by application of the exclusionary rule at trial would not be enhanced by continued application of the rule on federal habeas corpus review occurring many years after trial. Id. at 493.

The Supreme Court has extended the holding in Powell to preclude a Fourth Amendment challenge to the introduction into evidence of a confession made after an allegedly unlawful arrest.  See Cardwell v. Taylor, 461 U.S. 571, 572-73 (1983) (per curiam )(reversing grant of habeas corpus where circuit court of appeals had determined that arrest violated Fourth Amendment and that custodial statements taken following arrest should have been suppressed).

Following Powell, the Second Circuit developed a test to determine when a state prisoner has been denied an opportunity for full and fair litigation of his Fourth Amendment claims.  See Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).  The Second Circuit concluded that the state is only required to provide an "opportunity" for the criminal defendant to obtain a full and fair litigation of the Fourth Amendment claim. Thus, review of Fourth Amendment claims in federal habeas Bjorklund is warranted

7

only in two instances, "if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations" or "if the state has provided a corrective mechanism, but [Bjorklund] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Id. (citations omitted). Whether Bjorklund took full advantage of the opportunity to litigate his Fourth Amendment claims is irrelevant. The bar to federal habeas review of Fourth Amendment claims is insuperable as long as the state provided a full and fair opportunity for Bjorklund to litigate that claim. See Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002).

The Connecticut Practice Book sets forth the procedures for filing a motion to suppress evidence obtained as a result of an allegedly illegal search or seizure. See Conn. Practice Book §§ 41-12 through 41-17. Bjorklund filed a motion to suppress his confession and the trial court held an evidentiary hearing. See Resp't's Mem. App. S, Tr. of May 15, 2001 and May 16, 2001 at 1-142 (hearing on motion to suppress) and App. B at 73-109 (signed transcribed decision denying motion to suppress). Thus, Bjorklund clearly had a full and fair opportunity to litigate his Fourth Amendment claims and cannot meet the first exception that would enable this court to review this claim.

Bjorklund is dissatisfied with the state court's decisions denying his motions. The court construes his argument as an attempt to demonstrate an "unconscionable breakdown" in the state's corrective process to satisfy the second exception.

An "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." Cappiello v. Hoke,

8

698 F. Supp. 1042, 1050 (E.D.N.Y. 1988) (noting as examples, bribing trial judge,

government's knowing use of perjured testimony and extracting guilty plea by torture),

aff'd, 852 F.2d 59 (2d Cir. 1988); accord Capellan, 975 F.2d at 70 (observing that

"unconscionable breakdown" must entail some sort of "disruption or obstruction of a

state proceeding").  Thus, the inquiry must focus on "the existence and application of

the corrective procedures themselves" and not on the "outcome resulting from the

application of adequate state court corrective procedures" to determine whether an

unconscionable breakdown has occurred.  Capellan, 975 F.2d at 71.

Bjorklund availed himself of the state process by litigating his Fourth Amendment

claims at trial.  His disagreement with the state court's rulings "is not the equivalent of

an unconscionable breakdown in the state's corrective process."  Id. at 72; Gates v.

Henderson, 568 F.2d 830, 840 (2d Cir. 1977) ("Stone v. Powell ... holds that we have

no authority to review the state record and grant the writ simply because we disagree

with the result reached by the state courts."), cert. denied, 434 U.S. 1038 (1978).  Thus,

Bjorklund is not entitled to federal review of his Fourth Amendment claim.

## 2.  **Fifth Amendment**

Bjorklund argues that his confession was not intelligently made for several

reasons:  he did not understand that he had the right to counsel before and during

questioning; his waiver was not voluntary because he did not understand his rights; he

was subjected to oppressive questioning while suffering from methadone withdrawal

and was not given correct information by the police; and his confession was not

voluntary because he was suffering from methadone withdrawal.  See Bjorklund, 79

Conn. App. at 550-54, 830 A.2d at 1154-55.

9

The Connecticut Appellate Court identified the following facts as relevant to this claim. Bjorklund was arrested on the violation of probation warrant at approximately 3:30 p.m., on August 27, 1998 (the day after the homicide). He was taken to the detective bureau at the New Britain Police Department where Detective Baden began to interview him at approximately 4:40 p.m. Detective Baden told Bjorklund he was under arrest and began to read him his <u>Miranda</u> rights. Bjorklund stopped the detective and stated that he was well aware of his rights. When Detective Baden again attempted to inform Bjorklund of his rights, Bjorklund interrupted him. Bjorklund stated that he had been arrested before, knew his rights and proceeded to explain his rights to Detective Baden. Bjorklund would not agree to sign a waiver of rights form at that time. Instead, he spoke to Detective Baden and gave a written statement that he had engaged in an altercation with Bolduc over alcohol. Bjorklund reviewed his statement, signed it and then signed a waiver of rights form. At approximately 11:00 p.m., Bjorklund was booked on the violation of probation charge and placed in the lockup for the night. <u>Id.</u> at 546-47, 830 A.2d at 1151.

Bjorklund was returned to the interview room at approximately 8:00 a.m. the next day. When Detective Baden again tried to inform Bjorklund of his rights, Bjorklund interrupted him and stated that he understood his rights. Because Bjorklund had clearly explained his rights the night before, Detective Baden did not again ask Bjorklund to describe his rights. Bjorklund agreed to waive his rights and speak to Detective Baden. After the interview, Bjorklund agreed to give another written statement. Detective Baden read Bjorklund his rights and Bjorklund signed a waiver of rights form before giving the written statement. At approximately 1:00 p.m., Bjorklund was arrested and

10

charged with felony murder and assault.  Id. at 547, 830 A.2d at 1151-52.

Detective Baden was the only person to testify at the suppression hearing regarding the Miranda warnings.  He stated that, before Bjorklund gave his statement on August 27, 1998, Bjorklund told him that he knew that he had the right to have an attorney present; that if he spoke to the police, they would use the information against him in court; that he could stop answering questions at any time; and that if he could not afford an attorney, the court would appoint an attorney for him.  Detective Baden admitted that he could not recall the exact words used by Bjorklund, but that Bjorklund's statement was very close to Baden's testimony.  He stated that he was sure Bjorklund understood his rights under Miranda.  Id. at 548-49, 830 A.2d at 1152.

In denying the motion to suppress, the trial court credited Detective Baden's testimony and found that the police had tried to administer the Miranda warnings to Bjorklund on August 27 and again on August 28, 1998.  On both days, Bjorklund interrupted the warnings and assured the police that he understood his rights.  Thus, the trial court found that Bjorklund was well-aware of his Miranda rights and proceeded to waive those rights.  Id. at 549, 830 A.2d at 1152.

In analyzing this claim, the state court applied the standard established in Miranda v. Arizona, 384 U.S. 436 (1966).  Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1).  The court considers whether the decision of the Connecticut Appellate Court is an unreasonable application of federal law.

In Miranda, the Supreme Court required that four warnings be given before any custodial interrogation may begin.  The suspect must be told that "he has the right to

11

remain silent; that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for hm prior to any questioning if he so desires." Id. at 479.  The warnings need not be give in this exact language.  See Duckworth v. Eagan, 492 U.S. 195, 202 (1989) (noting that the Court has "never insisted that Miranda warnings be given in the exact form described in that decision"); California v. Prysock, 453 U.S. 355, 359 (1981) (per curiam) ("Miranda itself indicated that no talismanic incantation was required to satisfy its strictures").

To validly waive these rights, Bjorklund must have had "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986).  This awareness, however, does not include knowledge of all information in the possession of the police that may be useful in deciding whether to make a statement.  See Colorado v. Spring, 479 U.S. 564, 576-77 (1987) (person arrested need not be made aware of all crimes the police are investigating to validly waive his rights).  Thus, the fact that Detective Baden did not tell Bjorklund that the victim had died did not render his waiver involuntary.

In analyzing the voluntariness of a confession, the court considers the totality of the circumstances surrounding the confession.  See Arizona v. Fulminante, 499 U.S. 279, 282-89 (1991).  These circumstances include the suspect's background and experience, the conditions of the interrogation and the conduct of the law enforcement officers.  See United States v. Ruggles, 70 F.3d 262, 264-65 (2d Cir. 1995), cert. denied, 516 U.S. 1182 (1996).  The voluntariness of the confession is a question of law reviewed de novo by the federal court.  See Miller v. Fenton, 474 U.S. 104, 110-12

12

(1985).  The state court's factual findings of the circumstances  surrounding the

confession, such as the length of the interrogation, the conditions under which it was

conducted, whether the police intimidated the suspect and the suspect's familiarity with

the judicial process and the Miranda warnings are, like other facts, presumed to be

correct if adequately supported in the record.  See id. at 117.

 The only witness testifying at the suppression hearing with personal knowledge

about the interrogation was Detective Baden.  Bjorklund did not testify.  Thus, the trial

court's determination whether Bjorklund waived his rights was based on its assessment

of Detective Baden's credibility.  Detective Baden testified that Bjorklund interrupted him

when he was advising Bjorklund of his rights and stated that he had been through the

system before and was aware of his rights.  Bjorklund also explained those rights to

Detective Baden.  When questioned, Detective Baden was not sure of the exact words

Bjorklund used in explaining his rights but was certain that Bjorklund clearly understood

all of the Miranda rights.  Resp't's Mem. App. S, Transcript of May 15, 2001, at 15-16.

This testimony was uncontroverted and credited by the trial court.  The state court's

determination that Bjorklund understood all of his rights is a reasonable application of

Supreme Court law.

 In determining whether Bjorklund voluntarily waived his rights, the trial court

considered the totality of the circumstances.  Testimony at the suppression hearing

revealed that while he was in custody on August 27, 1998, Bjorklund was given a drink,

cigarettes and some cookies.  He was offered other food, but declined.  Bjorklund also

was allowed several bathroom breaks.  Id. at 11-12.  The interrogations, lasting less

than four hours on the first day and less than three hours the next morning, were not

particularly long.  Bjorklund was not a newcomer to the judicial system.  He had been arrested repeatedly since 1982, the most recent arrest just two weeks earlier.  Id. at 77-78, 83-88.  Bjorklund had a history of alcohol abuse and was being treated with methadone, but he did not appear either intoxicated or sick during the interrogation.  Id. at 31, 84.

In addition to Detective Baden, Bjorklund spoke with Captain Sullivan while in custody at the police department.  Captain Sullivan told Bjorklund that he would be released if he were able to post bond on the violation of probation charge.  He also confirmed Detective Baden's statement that the court would be informed if Bjorklund cooperated with the police.  Although he made no promises, Captain Sullivan did state that the police decided to speak to him before they spoke to Bolduc and that it was possible that, if the victim did not want to press charges, the police probably would not do so.  Id. at 41-42, 71-72.  Of course, by that time Bolduc had died, unbeknownst to Bjorklund.  The trial court found that these statements were not likely to cause Bjorklund to confess.  Id. at 150.  The trial court's finding is in accord with Supreme Court and Second Circuit cases.  See Frazier v. Cupp, 394 U.S. 731, 737, 739 (1969) (confession voluntary even though police officer falsely told suspect that companion had confessed); Green v. Scully, 850 F.2d 894, 903 (2d Cir. 1988) (holding that confession was voluntary even though police officers made false promises of leniency and misrepresented that there was sufficient evidence for arrest).

Further, the police had informed Bjorklund, prior to questioning, that they were investigating the assault of an elderly man and that he was a suspect.  The fact that they did not tell him that the victim had died and they also were considering a homicide

14

charge did not create any duress or coercion regarding the confession.  See Spring,

479 U.S. at 575-77 (noting police not required to provide continuing flow of information

to enable suspect to reevaluate decision to speak to police).

      Based on a interview with Bjorklund a year after his arrest, a psychiatrist testified

at the suppression hearing that Bjorklund was suffering from methadone withdrawal at

the time of the police interview.  Resp't's Mem. App. S, Transcript of May 15, 2001, at

122-24.  August 28, 1998 intake records from the Connecticut Department of

Correction, however, indicated that Bjorklund displayed no signs of withdrawal.

Considering all this evidence, the trial court rejected the testimony of the psychiatrist

because it found Bjorklund had "a motive to falsify and to exaggerate any symptoms."

Id. at 165.  The trial court found that Bjorklund's prior history of eight arrests in twelve

years for crimes involving dishonesty rendered his reputation for honesty and

truthfulness "extremely poor."  In addition, Bjorklund's mother testified that he was lying

about his treatment.  Id.

      After considering all of the evidence, the trial court determined that the

interrogation was of a reasonable length, was not conducted under overbearing

conditions, Bjorklund's methadone addition did not prevent him from understanding his

rights, and Bjorklund had extensive experience with the police and understood his rights

so well that he had committed them to memory.  Thus, the court concluded that

Bjorklund had knowingly, voluntarily and intelligently waived his rights.

This court concludes that the state court reasonably applied federal law in reaching this

determination.  The petition is denied on the ground that Bjorklund's confession was

introduced at trial in violation of his Fifth Amendment rights.

3.    **Sixth Amendment**

Bjorklund also argues that the use of his confession violated his Sixth Amendment rights.  The only Sixth Amendment claim raised in state court was a claim that counsel was ineffective for advising Bjorklund not to testify at the suppression hearing or at trial and for conducting inadequate cross-examination of the police at the suppression hearing and at trial.  See Second Amended Habeas Petition, Resp't's Mem. App. K at 6-7.  The court assumes that this claim is the basis for Bjorklund's reference to the Sixth Amendment.

An ineffective assistance of counsel claim is reviewed under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail, Bjorklund must demonstrate, first, that counsel's conduct was below an objective standard of reasonableness established by prevailing professional norms and, second, that this deficient performance caused prejudice to him.  Id. at 687-88.  Counsel is presumed to be competent.  Thus, Bjorklund bears the burden of demonstrating unconstitutional representation.  United States v. Cronic, 466 U.S. 648, 658 (1984).  To satisfy the prejudice prong of the Strickland test, Bjorklund must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial.  Strickland, 466 U.S. at 694.  The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions.  Rompilla v. Beard, 545 U.S. 374, 381 (2005).  To prevail, Bjorklund must demonstrate both deficient performance and sufficient prejudice.  Strickland, 466 U.S. at 700.  Thus, if the court finds one prong of the standard lacking, it

16

need not consider the remaining prong.

      In analyzing this claim, the state court applied the standard established in Strickland.  Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1).  The court will consider the last "reasoned" state court decision to determine whether the decision is an unreasonable application of federal law.  See Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991).  Here, the court reviews the decision denying the petition for writ of habeas corpus.

      Bjorklund and trial counsel testified at the state habeas hearing.  After considering their testimony, the state court concluded that Bjorklund had failed to establish that he was prejudiced by trial counsel's recommendation that he not testify at trial.  Bjorklund stated that, at trial, he would have denied taking the victim's wallet. Bjorklund had conceded, however, that the altercation began over money.  Bjorklund became angry with the victim for drinking Bjorklund's beer when he lacked sufficient funds to reciprocate.  The court also found that, after killing the victim, Bjorklund had taken the beer bottle and the victim's glasses because his fingerprints were on those objects.  Based on this evidence, the state habeas court concluded that the jury would not have believed Bjorklund's assertion that he did not take the victim's wallet. Bjorklund v. Warden, 2006 WL 2556626, at *4; see Strickland, 466 U.S. at 694 (to establish prejudice Bjorklund must demonstrate a reasonable probability that, but for counsel's unprofessional actions, the result of the proceeding would have been different).

17

Regarding trial counsel's cross-examination of the police officers at trial and at the suppression hearing, the state habeas court noted that Detective Baden testified consistently at both proceedings. A second police officer's testimony was of little value because he was unable to remember most of the details of the investigation. Bjorklund failed to present any evidence suggesting that trial counsel could have elicited any other information from the officers. To prevail on this claim, Bjorklund had to overcome the presumption that trial counsel's decisions were strategic. See Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002) ("Decisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature' and generally will not support an ineffective assistance of counsel claim.") (internal citation omitted). To overcome the presumption, Bjorklund was required to present evidence showing what an adequate cross-examination of the police officers would have revealed. Bjorklund did not do so and the state habeas court concluded that he failed to establish that trial counsel was ineffective in his cross-examination of the officers. Bjorklund v. Warden, 2006 WL 2556626, at *5.

In response to Bjorklund's motion for articulation, the state habeas court determined that Bjorklund was not prejudiced by trial counsel's recommendation that he not testify at the suppression hearing. The court found that Detective Baden was highly credible, while Bjorklund was not credible. The habeas court did not credit Bjorklund's testimony at the habeas hearing that he was not informed of his rights, that he did not understand his rights, that he was suffering from extreme drug withdrawal during the second interrogation and that the police had promised him Methadone in exchange for his confession that he had taken the victim's wallet. The state court also noted that,

18

although Bjorklund had not testified at the suppression hearing, the trial court had

considered, and rejected as unreliable, Bjorklund's statements to the psychiatrist.

Thus, the state habeas court concluded that Bjorklund had not shown that the outcome

of the suppression hearing would have been different had he testified.  See

Memorandum in Response to Bjorklund's Request for Articulation, Resp't's Mem. App.

J, Record on Appeal of State Habeas, at 28-31.

In considering these three examples of allegedly ineffective assistance, the state

court reasonably applied the Strickland standard to evaluate the adequacy of

assistance provided or the prejudiced allegedly resulting therefrom.  Thus, the petition

is denied on the ground that Bjorklund's confession was introduced in violation of his

Sixth Amendment rights.

### B.      Double Jeopardy and Introduction of Irrational and Inconsistent Verdicts

In state court Bjorklund presented this claim as one of an irrational or

inconsistent verdict only.  He now adds a characterization of the claim as a violation of

his right to be free from double jeopardy.  In essence, Bjorklund claims that the verdict

on assault in the first degree and "reckless indifference" manslaughter is inconsistent

with the verdict on "intentional" manslaughter and robbery in the first degree.  The first

two convictions require only recklessness, while the latter two require a mental state of

intent.

### 1.      Inconsistent or Irrational Verdicts

Bjorklund described this claim on direct appeal as "inconsistent verdicts."  This

claim, however, is not the type of inconsistent verdict claim described under Supreme

19

Court precedent.  The Supreme Court has held that an inconsistent verdict, where the

defendant is found guilty on some counts and not guilty on others, is not a ground for

habeas corpus relief.  See United States v. Powell, 469 U.S. 57, 58 (1984).  A claim of

an irrational or incorrect verdict, on the other hand, is asserted by seeking appellate

review of the sufficiency of the evidence.  The Supreme Court considers these two

claims distinct.  Id. at 67 (citing cases).  Bjorklund was found guilty on all counts.  Thus,

he fails to state an inconsistent verdict claim under federal law.  Even if he had, the

claim would not warrant federal habeas corpus relief.

The court considers the claim as challenging the verdicts as irrational.  The

Connecticut Appellate Court determined that it need not consider whether the verdicts

on intentional manslaughter and reckless indifference manslaughter were irrational.

Because the trial court merged the two manslaughter convictions with the felony murder

conviction, the manslaughter convictions do not exist as separate convictions while the

felony murder conviction remains in force.  Bjorklund did not challenge the felony

murder conviction.  Thus, the Connecticut Appellate Court found that it need not

consider Bjorklund's argument because the manslaughter convictions do not exist as

separate convictions.  Bjroklund, 79 Conn. App. at 568-69, 830 A.2d at 1163.  In

reaching this decision, the Connecticut Appellate Court cited Connecticut decisions

which rely on Second Circuit cases employing this practice to avoid violating the

criminal defendant's protection against double jeopardy.  Bjorklund has not identified

any U.S. Supreme Court case prohibiting this practice and the court can discern none.

Because this action does not violate clearly established Supreme Court law, the claim is

not cognizable in a federal habeas corpus action.  See 28 U.S.C. § 2254(d)(1) (federal

habeas relief available only if conviction obtained in violation of Supreme Court precedent).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  Federal courts, however, do not relitigate state trials and make independent determinations of guilt or innocence.  See Herrera v. Collins, 506 U.S. 390, 401-02 (1993).  When Bjorklund challenges the sufficiency of the evidence used to convict him, the court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  In discussing this standard, the Supreme Court had emphasized "the deference owed the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency [of the evidence] review."  Wright v. West, 505 U.S. 277, 296 (1992).

The Connecticut Appellate Court did not cite any federal cases in its review of this claim.  Upon review, however, this court concludes that the state court's analysis conforms to the federal standard.  See Early v. Packer, 537 U.S. 3, 8 (2002) (holding that state court need not be aware of nor cite relevant Supreme Court cases, so long as the reasoning and decision do not contradict the applicable law).  Thus, the decision is not contrary to U.S. Supreme Court law.

Regarding the robbery and assault convictions, the court stated that the jury reasonably could have found that Bjorklund had different mental states at different times during the incident.  For example, the jury could have found that Bjorklund

intended to cause serious physical injury to the victim when he kicked the victim in response to the victim's refusal to surrender his wallet.  The jury then could have found that Bjorklund acted recklessly by kicking the victim in the head when the victim already was suffering from serious physical injury.   Bjorklund, 79 Conn. App. at 567-68, 830 A.2d at 1162.  The Connecticut Appellate Court viewed the evidence in a light favorable to the prosecution and concluded that a reasonable jury could have found Bjorklund possessed different mental states at different times during the incident.  This court concludes that the state court determination is a reasonable application of Supreme Court law.  Accordingly, to the extent that the petition may be construed as challenging the sufficiency of the evidence to support these verdicts, the state court decision is not an unreasonable application of Supreme Court law.

### 2.   **Double Jeopardy**

Bjorklund did not present a double jeopardy claim to the state courts.  Thus, this claim is unexhausted and Bjorklund cannot obtain relief on this claim from the federal court.  See Aparicio v. Artuz, 269 F.3d 78, 90 n.5 (2d Cir. 2001).  The district court may, however, consider and deny an unexhausted claim on the merits.  See 28 U.S.C. § 2254(b)(2).

The Fifth Amendment's Double Jeopardy Clause provides that no person shall be "subject for the same offense to be twice put in jeopardy of life and limb."  Bjorklund was tried only once.  Thus, this prohibition is not applicable.  The Double Jeopardy Clause also prohibits multiple punishments for the same offense in a single proceeding.  See Jones v. Thomas, 491 U.S. 376, 380-81 (1989).  This latter protection is "limited to ensuring that the total punishment [does] not exceed that authorized by the legislature."

22

United States v. Halper, 490 U.S. 435, 450 (1989).

The trial court merged the manslaughter convictions with the felony murder conviction and sentenced Bjorklund only on the felony murder conviction.  As Bjorklund was not sentenced on the manslaughter convictions, he cannot state a double jeopardy claim for multiple punishments for the same offense.  The assault and robbery convictions require different mental states and are not the same offense.  Thus, these convictions do not give rise to a double jeopardy claim.  The petition is denied on the ground that the convictions violate Bjorklund's right to be free from double jeopardy.

        C.        **Confrontation Clause**

As his final ground for relief, Bjorklund asserts the same confrontation clause claim he raised on direct appeal.

The Connecticut Appellate Court considered the following facts in deciding this claim.  Gerld Podlack testified at the state probable cause hearing.  He stated that he was walking near the school at approximately 7:00 p.m., on August 26, 1998.  From about 100 feet away, he saw a man lying on the ground and Bjorklund standing over the man.  Bjorklund told Mr. Podlack not to be concerned, so Mr. Podlack continued walking.  When Mr. Podlack saw Bjorklund leave the scene with the man still lying on the ground, he went to a neighbor's house and telephoned the police.  Bjorklund, 79 Conn. App. at 569, 830 A.2d at 1163.

On cross-examination, Mr. Podlack stated that he did not wear glasses and did not come nearer than 100 feet to Bjorklund and the victim.  He did not see anything in Bjorklund's hands or on the ground and he did not see Bjorklund put anything in his pockets.  He did not see Bjorklund touch the victim in any way.  Bjorklund was pacing

near the victim and Mr. Podlack sensed that something was wrong.  Id. at 569-70, 830 A.2d at 1163.

Waltraut Podlack. Gerld's wife, testified at trial.  She stated that she found the victim's watch and wallet in her garden in May 2000.  Mr. Podlack was unavailable to testify at trial for health reasons.  The state moved to introduce into evidence his testimony from the probable cause hearing.  Bjorklund argued that the testimony was unreliable because the victim's watch and wallet were not found until after the probable cause hearing was held, and thus after the cross examination of Mr. Podlack.  The trial court allowed the state to play an audiotape of Mr. Podlack's probable cause hearing testimony for the jury.  Id. at 570, 830 A.2d at 1163-64.

Criminal defendants have a constitutional right to confront and cross-examine the witnesses against them.  See Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986).  Cross-examination permits the defendant to elicit facts showing the witness' motive in testifying, bias or prejudice and should not be unduly restricted.  The jury must receive sufficient information to evaluate the credibility and reliability of the witness.  See Davis v. Alaska, 415 U.S. 308, 318 (1974).

The right to confrontation and cross-examination is not absolute.  See Rock v. Arkansas, 483 U.S. 44, 55 (1987).  The court retains broad discretion to reasonably limit cross-examination.  The constitution does not guarantee "cross examination that is effective in whatever way, and to whatever extent the defense might wish."  Van Arsdall, 475 U.S. at 679.

The Confrontation Clause applies to the admission of prior statements by an unavailable declarant.  See Delaware v. Fensterer, 474 U.S. 15, 18 (1985) (citing

24

cases).  Such statements, however, are not automatically excluded.  If the prosecution demonstrates that the declarant is unavailable, his prior statement will be admitted if it bears adequate "indicia of reliability."  Ohio v. Roberts, 448 U.S. 56, 66 (1980).

The Connecticut Appellate Court concluded that any error in admitting the probable cause hearing testimony was harmless.   When deciding whether an alleged violation of the Confrontation Clause is harmless, the Supreme Court requires the court to consider several factors including the importance of the testimony to the prosecutor's case, whether the testimony was cumulative, the existence of corroborating or contradicting evidence in the record, the ability to cross-examine the witness on other areas and the extent of that cross-examination, and the effect of the testimony on the criminal defendant's guilt.  See Van Arsdall, 475 U.S. at 684.  The court must determine whether, assuming the damaging potential of the statement were fully realized, the error was harmless beyond a reasonable doubt.  Id.

The state court did not cite federal cases in this portion of its decision.  The state cases relied upon, however, require review of the same factors as Van Arsdall.  This court concludes that the state court's harmless error analysis conforms to the federal standard.  See Early, 537 U.S. at 8.  Thus, the decision is not contrary to Supreme Court law.

Bjorklund argued that the testimony should not have been admitted because, in light of the fact that the victim's wallet was found in Mr. Podlack's yard, he was unable to question Mr. Podlack about whether he had taken the wallet.  The Connecticut Appellate court first determined that Mr. Podlack was unavailable to testify at trial.  The court then noted that Mr. Podlack was subject to unrestricted cross-examination at the

probable cause hearing regarding his statements that he was never closer than 100

feet from the victim and did not see a wallet.  The court concluded, in light of

Bjorklund's confession that he took the victim's wallet, that there would be limited

importance in the ability to cross-examine Mr. Podlack regarding whether he had taken

the wallet.  See Bjorklund, 79 Conn. App. at 570-72, 830 A.2d at 1164-65.  Considering

these factors, the Connecticut Appellate Court determined that the inability to cross-

examine Mr. Podlack regarding the possibility that he took the victim's wallet had no

effect of the determination of guilt and was harmless as a matter of law.  The court

concludes that the Connecticut Appellate Court reasonably applied applicable Supreme

Court law in its harmless error analysis.  Accordingly, the petition is denied on this

ground.[4]

## V.    Conclusion

The Petition for Writ of Habeas Corpus [**Dkt. #1**] is **DENIED**.  The Clerk is

directed to enter judgment in favor of the respondent and close this case.

The court concludes that Bjorklund has not shown that he was denied a

constitutionally or federally protected right.  Thus, any appeal from this order would not

be taken in good faith and a certificate of appealability will not issue.

---

[4]  In Crawford v. Washington, 541 U.S. 36, 53-54 (2004), the Court held that an out-of-
court testimonial statement was not admissible unless the witness was unavailable to testify
and the defendant had a prior opportunity for cross-examination.  Prior testimony at a
preliminary hearing is considered a testimonial statement.  Id. at 68.  The Supreme Court has
not yet addressed whether Crawford alters the appropriate analysis for Confrontation Clause
claims.  The Second Circuit has held that a Confrontation Clause claim remains subject to
harmless error analysis.  U.S. v. Lombardozzi, 491 F.3d 61, 76 (2d Cir. 2007).

**SO ORDERED.**

Dated this 30th day of October, 2009, at Hartford, Connecticut.

/s/ Christopher F. Droney
Christopher F. Droney
United States District Judge